UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J.A.G.P., a minor, through his guardian, )<br>SERAFIN A. GARCIA LOPEZ, as Personal )<br>Representative of the heirs of YUNAISI )<br>PELEGRINO REYES, deceased, *et al.*, )<br>                   )<br>      Plaintiffs,     )<br>                   )<br>      v.            )<br>                   )<br>AEROLINEAS DAMOJH, S.A. de )<br>C.V., a foreign corporation d/b/a )<br>GLOBAL AIR, *et al.*, )<br>                   )<br>      Defendants.    ) | No. 1:19-CV-02552<br><br>Judge Edmond E. Chang |

MEMORANDUM OPINION AND ORDER

A group of heirs and personal representatives of the people who died in the May 2018 crash of a Global Air flight have sued (among others) Global One Training Group, LLC.[1] The Plaintiffs allege that Global One negligently failed to train and instruct the flight crew of the aircraft that crashed. R. 111, Compl.[2] Global One has moved to dismiss for failure to adequately state a claim, Fed. R. Civ. P. 12(b)(6),

---

[1]In its brief, Global One says that this case is "potentially" governed by the Multiparty, Multiforum Trial Jurisdiction Act (MMTJA), 28 U.S.C. § 1369. *See* R. 125-2, Def.'s Br. at 1–2. But Global One offers no substantive argument against the MMTJA's application here. *See id.* The MMTJA confers district courts with jurisdiction when there is minimal diversity between adverse parties, the case arises from a single accident where at least 75 people died at the same location, and (as is the case here) any two defendants reside in different States. 28 U.S.C. § 1369(a)(2). Global One's own filings make it clear that these requirements are satisfied. There is minimal diversity between adverse parties. Def.'s Br. at 1–2; Compl. ¶¶ 1–7. And at least 75 people died at the same location. Def.'s Br. at 1; Compl. ¶ 7. Plus, Global One is based in Florida. Def.'s Br. at 2; Compl. ¶ 6.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

arguing that: (1) the Plaintiffs are asserting claims of "educational malpractice," which are not cognizable claims; and (2) the complaint fails to give fair notice of the claims and the grounds upon which they rest. R. 125, Def.'s Mot. For the reasons discussed in this Opinion, the motion is denied.

## I. Background

This case arises from the tragic airline accident that happened in Cuba on May 18, 2018. Compl. ¶¶ 7, 12. More than 75 people lost their lives. *Id.* ¶ 7. The Plaintiffs have brought a variety of cases, now consolidated under Case Number 19-cv-02552. In addition to suing the airline, the airplane's manufacturer, and others, the Plaintiffs have sued Global One, the company that allegedly trained the flight crew who were flying the airplane when it crashed. *See* Compl. at Counts 13–14.

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Airplane maker Boeing designed, manufactured, assembled, inspected, and sold the aircraft. Compl. at 10, ¶ 13. In 2005, Wells Fargo Bank Northwest, N.A. purchased the aircraft. *Id.* ¶ 9. When the aircraft left Boeing's control and at the time when Wells Fargo purchased the aircraft, the aircraft allegedly was unreasonably dangerous and defective in one or more of the following ways, among others: the flight-control surfaces, rudder, and rudder control system were subject to failure; the rudder power control unit rods were defective, brittle, and fractured; the stabilizer and stabilizer bearing were subject to failure, causing pitch oscillation during the climb of the aircraft; and the engines were subject to catching on fire. Compl. at 9, ¶ 14; *id.* at 16, ¶ 13. Wells Fargo allegedly sold the

2

plane to Meigas Aviation[3] in 2008. *Id.* ¶ 10. At some point before the accident, Meigas leased the aircraft to Defendant Aerolineas Damojh, S.A., and Damojh then wet-leased the aircraft and flight crew to Cubana de Aviación for the commercial transportation of passengers. *Id.* ¶ 11. At the time of the accident, Damojh operated the aircraft for Cubana de Aviación. *Id.* ¶ 12.

The Plaintiffs allege that Global One provided flight training to the flight crew of the aircraft—including on Boeing 737-200 flight simulators—on various dates in Florida before the accident happened. Compl. at 31, ¶ 13; *id.* at 32, ¶ 13. According to the Plaintiffs, Global One negligently failed to train and instruct the flight crew in the proper and safe operation of the aircraft; maintaining the proper airspeed, angle of attack, and wings level of the aircraft; maintaining operational control of the aircraft; and responding appropriately to a stall, rudder hardover, and pitch oscillations of the aircraft. *Id.* at 31, ¶ 15; *id.* at 32–33, ¶ 15. Due to Global One's allegedly negligent training and instruction, shortly after takeoff, the aircraft "went into a stall, rudder hardover, and/or pitch oscillation[,]" caught fire in the engine, and then flipped over and crashed, resulting in the decedents' injuries and deaths. *Id.* at 31, ¶ 16; *id.* at 33, ¶ 16.

In April 2019, the Plaintiffs filed this lawsuit arising from the accident. R. 1. The Plaintiffs later added Global One as a defendant in October 2020. *See* Compl. at Counts 13–14. Global One moved to dismiss the claims against it by challenging

---

[3]In this Opinion, Defendants Meigas Aviation Services, Ltd., Meigas Aviation 23180 Inc., and Meigas Aviation Services LLC are collectively referred to as "Meigas."

personal jurisdiction, Fed. R. Civ. P. 12(b)(2), and challenging the adequacy of the claim, Fed. R. Civ. P. 12(b)(6). *See* Def.'s Mot. In January 2022, Global One withdrew its Rule 12(b)(2) personal-jurisdiction challenge. R. 170 at 1; R. 171. But the Rule 12(b)(6) challenge remains pending.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

Global One first argues that the asserted claims are "educational malpractice" claims, which are not cognizable under Illinois common law. *See* Def.'s Mot. at 3–4; Def.'s Br. at 8–13. Second, Global One argues that the Plaintiffs fail to identify: the flight crew by name; the simulator owned or operated by Global One that was used for training the flight crew; and the dates of the alleged training that Global One provided to the crew. Def.'s Mot. at 3; Def.'s Br. at 9. For the reasons discussed below, the motion is denied.

### A. Educational Malpractice

To Global One's way of thinking, the Plaintiffs' claims are really so-called "educational malpractice" claims because they are based on Global One's alleged negligence in training and instructing the flight crew. According to Global One, this cause of action—educational malpractice—is not actionable under Illinois law. *See* Def.'s Mot. at 3–4; Def.'s Br. at 8–13.

Educational malpractice claims are "claims alleging negligent instruction." *Polley v. Northwestern Univ.*, 560 F.Supp.3d 1197, 1206–07 (N.D. Ill. 2021) (quoting *Waugh v. Morgan Stanley & Co.*, 966 N.E.2d 540, 554 (Ill. App. Ct. 2012)). "A plaintiff raises an educational malpractice claim if a plaintiff asks a court to evaluate the course of instruction or the soundness of a method of teaching that has been adopted

by an educational institution." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 882 (7th Cir. 2022). There are "three broad categories of educational malpractice claims": "(1) the student alleges that the school negligently failed to provide him with adequate skills; (2) the student alleges that the school negligently diagnosed or failed to diagnose his learning or mental disabilities; or (3) the student alleges that the school negligently supervised his training." *Waugh*, 966 N.E.2d at 549 (quoting *Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696, 699 (Mo. Ct. App. 2008)).

To resolve this dispute, the first step is to determine which state's law applies. The parties appear to agree that Illinois law supports applying the educational-malpractice bar to flight training companies. *See* R. 183, Pl.'s Resp. at 5 (acknowledging that an Illinois Appellate Court has "broadly construed the educational-malpractice doctrine and applied it to bar negligent training and instruction claims in the aviation context") (citing *Waugh*, 966 N.E.2d). But the Plaintiffs argue that Florida law—not Illinois law—applies to the claims against Global One. *See* Pl.'s Resp. at 5. The Plaintiffs argue that, under Florida law, the educational-malpractice bar would not apply to negligent training and instruction claims against a flight training company. *Id.* at 8–12. In other words, the Plaintiffs pose a choice-of-law question, arguing that Florida law applies. In Global One's reply brief, the company does not attempt to rebut that Florida law. In any event, for the reasons explained below, the Court holds that

Florida law applies to the claims against Global One.[5] Under Florida law, the educational-malpractice bar would not apply to those claims.

### 1. Conflict Between Illinois and Florida

Because this Court has subject matter jurisdiction under the MMTJA, 28 U.S.C. § 1369, which requires minimal diversity of citizenship, the Court applies the forum state's choice-of-law rules to determine which state's substantive law applies. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). In Illinois, courts apply forum law unless there is "an actual conflict with another state's law." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020). "The party seeking the choice-of-law determination bears the burden of demonstrating a conflict, *i.e.*, that there exists a difference in the law that will make a difference in the outcome." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014).

The Plaintiffs have met their burden of showing that an actual conflict exists between Illinois law and Florida law on whether the educational-malpractice bar applies to flight training companies. It is true that neither the Supreme Court of Florida

---

[5]The Plaintiffs raise the choice-of-law question to "Global One only and the educational malpractice defense they assert." *See* Pl.'s Resp. at 5, n.2. The Court's determination here that Florida law applies to the claims against Global One are limited to Global One only for the purposes of the Motion. *See Ruiz v. Blentech Corp.*, 89 F.3d 320, 323–24 (7th Cir. 1996) (noting courts may conduct "a separate choice-of-law analysis for each issue in a case, attempting to determine which state has the most significant contacts with that issue"); *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 901 (Ill. 2007) ("[T]he Second Restatement authorizes the process of *depecage*, which refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis.") (emphasis in original).

nor the Illinois Supreme Court has decided this issue. But other courts in those states *have* predicted how the states' Supreme Courts would decide it. Although both Illinois and Florida recognize the educational-malpractice doctrine, an Illinois court has held the bar on that type of claim extends to flight training companies, whereas a Florida court has held to the contrary.

Applying Illinois law, in *Ross v. Creighton University*—a case involving a university's alleged failure to provide access to a student to its academic curriculum—the Seventh Circuit held that, if presented with the question, "the Illinois Supreme Court would refuse to recognize the tort of educational malpractice." 957 F.2d 410, 415, 417 (7th Cir. 1992). *Ross* noted the broader concerns that animate the educational-malpractice bar, including the "inherent uncertainties" in proving causation and damages in this type of case. *Id.* at 414. Given the myriad factors that might contribute to a student's success (or failure), *Ross* recognized that external factors such as "the student's attitude, motivation, temperament, past experience and home environment may all play an essential and immeasurable role in learning." *Id.* (cleaned up). *Ross* also acknowledged the policy concerns that support barring educational-malpractice claims, including preventing "a flood of litigation against schools"; preventing "embroil[ing] the courts into overseeing the day-to-day operations of schools"; and a heightened risk  in the university setting, risking "academic freedom and autonomy." *Id.* at 414–15.

But neither the Seventh Circuit nor the Illinois Supreme has not decided whether the educational-malpractice bar applies in the context of an aviation-

training school. But an Illinois Appellate Court has decided this precise question—and answered that the bar does apply. In *Waugh v. Morgan Stanley & Co.*, 966 N.E.2d 540, 554 (Ill. App. Ct. 2012), the plaintiffs—including administrators of the estates of the passengers who were killed in an airplane crash—sued the airplane's late pilot and the pilot's former employer for negligence. 966 N.E.2d at 544. In turn, the pilot's estate and former employer filed a third-party complaint and counterclaims against multiple flight schools and flight instructors for allegedly negligently training the pilot. *Id.* The trial court dismissed the claims against the flight schools as educational-malpractice claims and dismissed related claims against the flight instructors. *Id.* at 546.

On appeal, *Waugh* held that the claims against the flight instructors and schools for the alleged negligent training were barred as educational-malpractice claims. 966 N.E.2d at 555. The court reasoned that because the claims against those defendants require "an analysis of the educator's conduct in providing educational services[,]" the claims were premised on educational malpractice and were barred as a matter of law. *Id.* Like the Seventh Circuit in *Ross*, the court in *Waugh* relied on the policy considerations underlying the bar, including the risks of a "flood of litigation against schools" and that the claims would entangle courts into overseeing the daily operations of schools. *Id.* at 552. *Waugh* also noted the "inherent uncertainties about causation and the nature of damages [for educational malpractice cases] in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment." *Id.* Relying, in part, on a Missouri appellate

case, *Waugh* concluded these same concerns extend to flight instructors and flight instruction companies, and so the claims against the defendant flight instructors and schools were educational malpractice claims and not cognizable under Illinois law. *Id.* at 552, 555 (citing *Dallas Airmotive, Inc.*, 277 S.W.3d at 699).

In contrast, a federal district court applying Florida state law reached the opposite conclusion. In *Newman v. Socata SAS*, the court concluded that it was unlikely that the Florida Supreme Court would extend the educational-malpractice bar—typically applied only to institutions providing "general education"—to negligent instruction and training claims against "a private, for-profit flight school." 924 F. Supp. 2d at 1323, 1326. There, the plaintiffs, administrators of the estates of passengers who died in a plane crash, sued the flight-training company that trained the aircraft's pilot. *Id.* at 1323. After considering the "limited application of the educational malpractice bar and the policy reasons for it recognized in Florida and elsewhere," *Newman* expressed doubt that the Florida Supreme Court would "recast Plaintiffs' claims of negligence and breach of contract against [the flight training company] as educational malpractice claims." *Id.* at 1329.

*Newman* also court concluded that the policy implications that justify the educational-malpractice bar simply do not apply to negligence claims against flight-training companies. For example, "unlike in traditional educational malpractice cases," concerns about causation and damages are "not daunting" in the flight-instruction context. *Newman*, 924 F. Supp. 2d at 1329. That is, in typical educational-malpractice cases (say, against a traditional academic school), a fact-finder would be forced to

confront the "extraordinary problems in seeking to determine the cause of a student's failure to perform in an academic endeavor" with "many outside factors at play that bear on a student's success, including physical, neurological, emotional, cultural, and environmental factors." *Id.* (cleaned up). But in *Newman*, the allegations for failure to train the pilot did not involve the pilot's "lack of success in study or [] inability to learn," and, moreover, the familiar elements of negligence—duty, breach, causation— were "workable." *Id.* at 1329–30.

Relatedly, the policy considerations at issue in traditional educational mal-practice cases—separation of powers, for example—were not at issue in this case against a commercial, for-profit flight school. *Newman*, 924 F. Supp. 2d at 1329 (dis-tinguishing *Newman* from traditional educational-malpractice case, *Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906 (Fla. 1995)). *Newman* also reasoned that the "possibility of litigation against a private provider of services was not a valid rea-son for providing immunity from suit to such a provider." 924 F. Supp. 2d at 1330. Ultimately, the court allowed the claims against the flight school to proceed because the claims were against a "for-profit commercial entity, teaching a narrowly struc-tured course of operation of a specific type of aircraft" and did not implicate the policy concerns cited in other cases imposing the educational-malpractice bar. *Id.* at 1329.

In sum, Illinois law and Florida law do indeed conflict on whether the educa-tional-malpractice bar applies to negligent training and instruction claims against commercial flight schools or training providers. Illinois law disallows those claims; Florida law allows them. This distinction in Illinois' and Florida's laws would "make

11

a difference in the outcome" of this dispute: if Illinois law applies, then the claims against Global One would be dismissed, but if Florida law applies, then the claims survive. *Bridgeview Health Care Ctr., Ltd.*, 10 N.E.3d at 905. Because there is an actual conflict of laws, the Court next applies a choice-of-law analysis to decide whether Illinois or Florida law applies.

## 2. Choice of Law

A federal court sitting in diversity looks to the choice-of-law rules of the forum state. *Paulsen v. Abbott Lab'ys*, 39 F.4th 473, 477 (7th Cir. 2022). In tort cases, when conducting a substantive choice-of-law analysis, Illinois courts follow the approach of the Second Restatement of Conflicts of Laws. *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007). "Under the Second Restatement, the law of the State that has the most significant relationship to the occurrence and the parties applies." *Boogaard v. National Hockey League*, 255 F.Supp.3d 753, 759 (N.D. Ill. 2017).

When applying the "most significant relationship" test, courts should consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 901 (Ill. 2007) (citing Restatement (Second) of Conflict of Laws § 145(2)); *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012). "Generally, in a tort case, the two most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred." *Miller v. Long-Airdox Co.*, 914 F.2d 976, 978

(7th Cir. 1990). The Seventh Circuit has recognized that typically "the highest scorer" for the most significant relationship test is "the place where the tort occurred." *Abad v. Bayer Corp.*, 563 F.3d 663, 669–70 (7th Cir. 2009). Although victim location and injurer location are "valid considerations," "when they point to two different jurisdictions they cancel out, leaving the place where the injury (and hence the tort) occurred as the presumptive source of the law governing the accident." *Id.* at 670.

The Plaintiffs argue that the most-significant-relationship test points to Florida. *See* Pl.'s Resp. at 5. Global One does not attempt to counter that the test favors Florida, nor does Global One argue that Illinois law applies. In any event, the Court agrees with the Plaintiffs that the test favors applying Florida law. Yes, the crash occurred in Cuba. But the alleged conduct that allegedly caused the injury—Global One's alleged negligent training and instruction—happened in *Florida*. Compl. at 31, ¶ 13; *id.* at 32, ¶ 13. Moreover, Global One is incorporated in and has its principal place of business in Florida. *Id.* ¶ 6. The majority of the Plaintiffs are Cuban citizens, and none are Illinois citizens, Pl.'s Resp. at 6, which weakens the case's connection to Illinois. On the place where the parties' relationship is centered, there is no direct relationship between the Plaintiffs and Global One. But given the allegations, the training happened in Florida, where Global One allegedly negligently trained and instructed the flight crew who operated the aircraft.

And none of the relevant choice-of-law factors point to Illinois. It is undisputed that Global One has no offices in Illinois and has not provided training in Illinois, and (to repeat) none of the Plaintiffs are Illinois citizens. Pl.'s Resp. at 5–6. Given this

lack of contacts, it is highly unlikely that Illinois courts would have a particular interest in the dispute, whereas Florida *would* likely have an interest in regulating the alleged negligent conduct of one of its flight schools. *See Townsend*, 879 N.E.2d at 907.

In the absence of any argument for why Illinois law should govern the claims against Global One, and after considering the compelling facts and arguments set forth by the Plaintiffs, the Court concludes that, on balance, Florida is the state with the most significant relationship to the parties' dispute. Thus, Florida law shall apply to the claims. With that ground rule in mind, the Court turns to whether those claims survive dismissal under Florida law.

### 3. Educational Malpractice Under Florida Law

As explained above, Florida law generally has not applied a bar to educational-malpractice claims against commercial, for-profit flight schools. Florida courts have applied the educational-malpractice bar only against "public provider[s] of *general* education" and may apply the bar against "private entities providing *general* education." *Newman*, 924 F.Supp.2d at 1326 (emphases added). Indeed, as one Florida state court has noted, "most cases involving educational malpractice deal with plaintiffs who allege that their school failed to teach them reading, or failed to properly diagnose a learning disability." *Simon v. Celebration Co.*, 883 So. 2d 826, 832 n.5 (Fla. Dist. Ct. App. 2004). But, as *Newman* held, it is unlikely the Florida Supreme Court would extend the educational-malpractice bar to claims, like the one here, against a for-profit flight school providing specialized knowledge or "teaching a narrowly

14

structured course on the operation of a specific type of aircraft." 924 F.Supp.2d at 1323, 1329. An extension like that would be unwarranted "under existing Florida law or the policy considerations upon which the bar is based." *Id.* at 1329.

As explained by *Newman*, as applied to flight-training schools, there is no basis to be concerned over the separation of powers or over embroiling courts in the daily operations of schools. 924 F.Supp.2d at 1329–30. Relatedly, the difficulties of assessing causation and damages in traditional educational malpractice cases are also not implicated here. That is, the "familiar standards [of negligence]—duty, breach, and causation—are workable here, and the nature of damages is apparent in cases such as this one involving physical harm." *Id.* at 1330 (cleaned up). Also, the external factors (like a student's motivation or home environment) that may complicate a causation analysis of a "student's failure to perform in an academic endeavor" in a traditional educational malpractice case do not apply here. *Id.* at 1329. In sum, like in *Newman*, this dispute does not implicate the policy considerations and other concerns that underlie the educational-malpractice bar.

It bears emphasizing again that Global One does not rebut that Florida law applies. Global One does attempt to distinguish *Newman* from this case by arguing that the claims there centered on the flight school's alleged failure to warn the pilot about a known dangerous propensity of the aircraft. R. 184, Def.'s Reply at 7. According to Global One, because the Plaintiffs do not assert a failure-to-warn claim, *Newman*'s should not apply. But *Newman*'s rationale in rejecting the educational-malpractice bar against the flight school was not solely predicated on the failure-to-warn

15

claim. *Newman* held that it was unwarranted to extend the bar—traditionally applied to institutions providing general education—to a for-profit flight school providing specialized training. Moreover, in *Newman*, the court concluded that concerns about proving causation and damages were inapt as applied to flight-training schools. So too here. Florida law applies and does not bar the educational-malpractice claims.

### B. Counts 13 and 14 / Specific Details

Moving on, Global One asks to strike Count 13 or 14 as "duplicative, irrelevant, and moot," arguing that the two counts are "the same in text and legal theory." Def.'s Mot. at 4; Def.'s Br. at 3. But the counts are distinct. Count 13 centers on the damages (such as loss of support and companionship) of the decedents' family and heirs, whereas Count 14 centers on the damages suffered by the decedents themselves, including their pain and suffering at the time of the crash. Compl. at 32, Count 13, ¶ 18; *see also id.* at 33, Count 14, ¶ 16. There is no duplication.

Lastly, Global One argues that the Plaintiffs fail to give sufficient notice of their claims and the grounds on which they rest because the Complaint does not identify: the flight crew by name; the simulator owned or operated by Global One that was used for training of flight crew; and the dates of the alleged training that Global One provided to the crew. Def,'s Mot. at 3; Def.'s Br. at 9. But this level of particularity is generally not required at the pleading stage. That is for discovery to explore. In any event, the Plaintiffs assert that they have previously provided this information to Global One's counsel via email—a claim unrebutted by Global One in its Reply. *See* Pl.'s Resp. at 12–13. The claims are sufficiently pleaded.

## IV. Conclusion

For the reasons discussed in this Opinion, Global One's motion to dismiss is denied. The Plaintiffs and Global One shall confer and proposed a discovery schedule in a status report due on September 13, 2024.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 30, 2024